IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| James Call , <br><br>*On behalf of himself and those similarly situated*, <br><br>Plaintiff, <br><br>v. <br><br>CTA Pizza, Inc., Donald L. Smith, Jr., Paula J. Smith ., <br><br>Defendants. | Case No. 2:18-CV-00696-ALM-CMV |

PLAINTIFF'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiff James Call asks that the Court grant final approval to the parties' Settlement Agreement, attached as Exhibit 1, and, at the conclusion of the settlement process, dismiss the case with prejudice. Defendants do not oppose this motion. The proposed Settlement Agreement resolves Plaintiff's individual claims.

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620

*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

───────────────────────────────────────────────────────────────

Memorandum in Support of
Plaintiff's Unopposed Motion for Settlement Approval

───────────────────────────────────────────────────────────────

1. **Introduction**

The parties seek the Court's approval of this wage and hour settlement because it is fair, adequate, and reasonable. Upon Defendants' final payment of the settlement funds, the parties ask that this Court dismiss the case in its entirety and with prejudice as to plaintiff James Call.

2. **Background of the Lawsuit**

Plaintiff James Call delivers pizzas for a Domino's franchised restaurant. He brought this case on behalf of himself and similarly situated drivers to recover unpaid wages under the Fair Labor Standards Act ("FLSA") and Ohio law against the Domino's franchisee he works for, CTA Pizza, Inc., Donald L. Smith, Jr., and Paula J. Smith.

The primary claim in this lawsuit is that Defendants paid the delivery drivers at or below the applicable minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. There is no dispute that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35. Here, Plaintiff alleges that until 2016, drivers received a flat reimbursement payment for each delivery they completed, such as $1.25 per delivery. Doc. 1, ¶ 85. Since 2016, according to Plaintiff, Defendants have reimbursed a per-mile rate that has ranged from $.15 to $.24 per mile. *Id*. at ¶ 106.

Plaintiff alleges that this policy violates the FLSA and Ohio wage law because Defendants are required to reimburse either for actual expenses incurred, with corresponding records kept of

3

those expenses and reimbursements, or at the IRS standard business mileage rate (which was between $0.535 and $0.545 during the relevant time period). *See, e.g.,* DOL Handbook § 30c15(a); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018). Defendants claim that they are permitted to reimburse a "reasonable approximation" of the drivers' expenses, and that their reimbursement policy has done that. *See, e.g., Wass v. NPC*, 688 F.Supp.2d 1282 (D.Kan. Mar. 2, 2010).

Shortly after this case was filed, Defendants presented Plaintiff with an arbitration agreement that he had signed. Pursuant to that arbitration agreement, the parties stipulated to stay the case and pursue individual arbitration.

The parties then commenced negotiation of the settlement that is currently before the Court. Defendants provided Plaintiff's counsel with data and records related to the miles driven by Mr. Call. On January 1, 2019, Plaintiff ultimately filed for arbitration with the American Arbitration Association. Shortly thereafter, the parties entered into and executed the settlement agreement attached hereto as Exhibit 1.

3. **Summary of Plaintiff's Claims**

Defendants provided Plaintiff's counsel with data and records related to the miles driven by Mr. Call. Their records indicated that Mr. Call drove approximately 32,426 miles and was reimbursed approximately $0.20 per mile on average.

By Plaintiff's calculations, if Mr. Call's unpaid wages were calculated at an approximate IRS standard business mileage rate of $.55 per mile, he suffered approximately $11,222.13 in unpaid wages. If calculated at a "compromise rate" of $.45 per mile, he suffered approximately $7,979.53 in unpaid wages.

Under the Ohio Constitution, Article II, Section 34a, Plaintiff asserts that he is also entitled to an additional two times his unpaid wages as damages, as well as liquidated damages under the FLSA, 29 U.S.C. § 260. Finally, Plaintiff is arguably entitled to liquidated damages under the Ohio Prompt Pay Act, O.R.C. § 4113.15, if he could show that the wages owed to him were not "in dispute." The applicability of the additional damages amounts would have depended on the arbitrator's decision as to whether all forms of additional damages should "stack" on top on one another, or if they are only available in the alternative. *See, e.g., Evans v. Loveland Automotive Investments, Inc.*, 632 Fed. Appx. 496, 498 (10th Cir. 2015); *see also Chowdhury v. Hamza Express Food Corp, et al.,* No 15-3142 (2d Cir. Dec. 7, 2016) (denying stacking of FLSA and New York Labor Law damages). As such, under the IRS standard business mileage rate, Plaintiff's total possible, best-case-scenario recovery would be:

$11,222.13 in unpaid wages

$22,444.26 in Ohio Constitutional damages

$11,222.13 in FLSA liquidated damages

+ an additional amount in Prompt Pay Act damages.[1]

The total amount at the IRS rate would be $44,888.52, plus Prompt Pay Act damages.

If it was ultimately determined the $.45 per mile is the proper reimbursement rate, Plaintiff's total possible, best-case-scenario recovery would be:

$7,979.53 in unpaid wages

$15,959.06 in Ohio Constitution damages

---

[1] If Prompt Pay Act liquidated damages do apply, the next question is how the liquidated damages are calculated. If each pay period is a separate violation, which is how the FLSA treats violations, then Plaintiff would arguably be entitled to $200 per pay period. If the violation is considered a continuing violation, Plaintiff would arguably be entitled to 6% interest on his unpaid wages.

5

$7,979.53 in FLSA liquidated damages

+ an additional amount in Prompt Pay Act damages.

The total amount at $.45 per mile would be $31,918.12, plus Prompt Pay Act damages.

If it was ultimately determined that Defendants' reimbursement rate amounted to a "reasonable approximation" of Plaintiff's expenses and was therefore deemed appropriate, obviously, Plaintiff would not be entitled to anything.

In addition to the above unpaid wages and damages, Plaintiff has also incurred approximately $5,602 in attorneys' fees and $718.65 in costs. He would be entitled to these amounts, and any additional amounts accrued, if he prevailed at arbitration.

The resolution of these issues would require the arbitrator ruling as a matter of law the IRS standard business mileage rate applies, or it would require a battle of the experts regarding the appropriate "reasonable approximation" of Plaintiff's expenses. This would have been a time-consuming and costly exercise.

4. **Summary of Settlement Terms**

The parties have agreed to settle this matter for $27,000. This settlement is fair, adequate, and reasonable because it provides substantial compensation to Plaintiff, but also recognizes the risk, uncertainty, and expense of going forward with arbitration.

From this settlement amount, $11,720.90 will be paid to Plaintiff as reimbursement for expenses incurred, and $5,860.45 will be paid to Plaintiff on a Form W-2. Pursuant to Plaintiff's contingency fee agreement with his counsel, a third check will be issued to Plaintiff's counsel in the amount of $9,418.65 for attorneys' fees and costs. In exchange, Plaintiff will dismiss his lawsuit

with prejudice as to him only, leaving other employees to pursue their claims separately if they so desire.

The parties' settlement agreement is attached hereto as Exhibit 1.

**5. The Standard for Settlement Approval**

When a current or former employee alleges a violation of the FLSA, either the Secretary of Labor must oversee the payment of unpaid wages, or if the employee brings a private action and the parties settle the matter, a district court may enter a stipulated judgment after evaluating the parties' settlement terms for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982); *see also Vigna v. Emery Federal Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *2 (S.D. Ohio 2016); *Gentrup v. Renovo Serv., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio 2011). In evaluating an FLSA settlement and, presumably, an Ohio law wage and hour settlement (because the same considerations apply), the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is the product of a bona fide dispute, is fair, reasonable, and adequate, and was reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

**5.1. The settlement is the product of a bona fide dispute.**

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6. In this case, Plaintiff's success on the under-reimbursement claim was not certain.

7

Both parties could present arguments to support a wide range of reimbursement rates as properly applicable here. Some of those arguments are purely legal in nature (*i.e.*, whether the IRS reimbursement rate applies), but some could require expert testimony to a jury. As it is, the settlement provides Plaintiff with almost 2.5x his alleged unpaid wage amount, calculated at the IRS rate, before fees and expenses are paid.

With respect to Plaintiff's Prompt Pay Act claim, success was even less certain. This claim is contingent on the under-reimbursement claim and mostly covers the same measure of damages. The difference is that the Prompt Pay Act claim also allows for the recovery of liquidated damages, but only if Plaintiff can show there was no dispute regarding the unpaid wages. O.R.C. 4113.15(B). And, as stated above, there was a bona fide dispute regarding both the existence of and amount of the unpaid wages, making Plaintiff's claim unlikely to succeed with respect to any damages beyond the unpaid wages already covered by the under-reimbursement claim.

### 5.2. The settlement is fair, reasonable, and adequate.

Given the complexity of the legal and factual questions before the arbitrator, the considerable time and expense required to litigate those questions, and the uncertainty of success, the settlement is fair, adequate, and reasonable. Continued litigation would have required substantial discovery, expense, and likely expert testimony. The settlement provides a benefit to Plaintiff and avoids the time, expense, and uncertainty of moving forward with his claims through the arbitration process.

### 5.3. The nature of negotiations.

The parties reached the above settlement after numerous discussions, exchanges of information, and additional negotiations. The parties negotiated at arm's length, through a multi-step process.

Defendants provided records of the miles driven and reimbursements paid to Plaintiff, which the parties agreed were an accurate reflection of Plaintiff's employment. From there, Plaintiff's counsel calculated the damages models discussed above, and counsel for the parties engaged in numerous phone calls and email communications to arrive at the final settlement amount and terms. After the financial terms of settlement had been reached, counsel for the parties completed substantial negotiations regarding the specific non-monetary terms of settlement, and Plaintiff ultimately formally filed for arbitration based on disagreements over those terms. After arbitration was filed, the parties quickly came to agreement on the non-monetary terms that govern the settlement.

Through the parties' efforts, the parties were able to reach the resolution now presented to the Court. This non-collusive, arms-length process allowed the parties to achieve a fair settlement agreement.

6. **The payment of attorneys' fees is reasonable.**

Under the terms of the settlement agreement, Plaintiff is entitled to an attorney's fee award. Here, Plaintiff requests approximately 1/3 of Plaintiff's total settlement pursuant to their contingency fee agreement with Plaintiff. Thus, Plaintiff asks for an award of $8,700, as agreed to in the Settlement Agreement. In addition, the settlement agreement provides for payment of $718.65 in expenses.

9

7. **Conclusion**

Plaintiff asks that the Court grant final approval to the parties' Settlement Agreement and, upon Defendants' payment of the settlement funds, dismiss the lawsuit in its entirety and with prejudice as to plaintiff James Call.


Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
Of Counsel to Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## **Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Andrew Kimble*

Andrew Kimble