IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES CALL, | : |
| | : Case No. 2:18-cv-00696 |
| Plaintiff, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Vascura |
| CTA PIZZA, INC., et al., | : |
| | : |
| | : |
| Defendants. | : |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Unopposed Motion for Settlement Approval. (Doc. 11.) Plaintiff asks the Court to approve the parties' Settlement Agreement and dismiss this case with prejudice. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion [#11].

**II. BACKGROUND**

The Court adopts the relevant background facts set forth in Plaintiff's Motion, which read as follows:

1. Background of the Lawsuit

Plaintiff James Call delivers pizzas for a Domino's franchised restaurant. He brought this case on behalf of himself and similarly situated drivers to recover unpaid wages under the Fair Labor Standards Act ("FLSA") and Ohio law against the Domino's franchisee he works for, CTA Pizza, Inc., Donald L. Smith, Jr., and Paula J. Smith.

The primary claim in this lawsuit is that Defendants paid the delivery drivers at or below the applicable minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. There is no dispute that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35. Here, Plaintiff alleges that until 2016, drivers received a flat reimbursement payment for each delivery they completed, such as $1.25 per delivery. Doc.

1

1, ¶ 85. Since 2016, according to Plaintiff, Defendants have reimbursed a per-mile rate that has ranged from $.15 to $.24 per mile. *Id.* at ¶ 106.

Plaintiff alleges that this policy violates the FLSA and Ohio wage law because Defendants are required to reimburse either for actual expenses incurred, with corresponding records kept of those expenses and reimbursements, or at the IRS standard business mileage rate (which was between $0.535 and $0.545 during the relevant time period). *See, e.g.*, DOL Handbook § 30c15(a); *Brandenberg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018). Defendants claim that they are permitted to reimburse a "reasonable approximation" of the drivers' expenses, and that their reimbursement policy has done that. *See, e.g.*, *Wass v. NPC*, 688 F. Supp. 2d 1282 (D. Kan. Mar. 2, 2010).

Shortly after this case was filed, Defendants presented Plaintiff with an arbitration agreement that he had signed. Pursuant to that arbitration agreement, the parties stipulated to stay the case and pursue individual arbitration.

The parties then commenced negotiation of the settlement that is currently before the Court. Defendants provided Plaintiff's counsel with data and records related to the miles driven by Mr. Call. On January 1, 2019, Plaintiff ultimately filed for arbitration with the American Arbitration Association. Shortly thereafter, the parties entered into and executed the settlement agreement attached hereto as Exhibit 1.

2. <u>Summary of Plaintiff's Claims</u>

Defendants provided Plaintiff's counsel with data and records related to the miles driven by Mr. Call. Their records indicated that Mr. Call drove approximately 32,426 miles and was reimbursed approximately $0.20 per mile on average.

By Plaintiff's calculations, if Mr. Call's unpaid wages were calculated at an approximate IRS standard business mileage rate of $.55 per mile, he suffered approximately $11,222.13 in unpaid wages. If calculated at a "compromise rate" of $.45 per mile, he suffered approximately $7,979.53 in unpaid wages.

Under the Ohio Constitution, Article II, Section 34a, Plaintiff asserts that he is also entitled to an additional two times his unpaid wages as damages, as well as liquidated damages under the FLSA, 29 U.S.C. § 260. Finally, Plaintiff is arguably entitled to liquidated damages under the Ohio Prompt Pay Act, O.R.C. § 4113.15, if he could show that the wages owed to him were not "in dispute." The applicability of the additional damages amounts would have depended on the arbitrator's decision as to whether all forms of additional damages should "stack" on top of one another, or if they are only available in the alternative. *See, e.g.*, *Evans v. Loveland Automotive Investments, Inc.*, 632 F. App'x 496, 498 (10th Cir. 2015); *see also Chowdhury v. Hamza Express Food Corp, et al.*, No 15-3142 (2d Cir. Dec. 7, 2016) (denying stacking of FLSA and New York Labor Law damages). As such, under the IRS standard business mileage rate, Plaintiff's total possible, best-case-scenario recovery would be:

$11,222.13 in unpaid wages

$22, 444.26 in Ohio Constitutional damages

$11,222.13 in FLSA liquidated damages

+ an additional amount in Prompt Pay Act damages.

If it was ultimately determined the $.45 per mile is the proper reimbursement rate, Plaintiff's total possible, best-case-scenario recovery would be:

$7,979.53 in unpaid wages

$15,959.06 in Ohio Constitution damages

$7,979.53 in FLSA liquidated damages

+ an additional amount in Prompt Pay Act damages

The total amount at $.45 per mile would be $31,918.12, plus Prompt Pay Act damages.

If it was ultimately determined that Defendants' reimbursement rate amounted to a "reasonable approximation" of Plaintiff's expenses and was therefore deemed appropriate, obviously, Plaintiff would not be entitled to anything.

In addition to the above unpaid wages and damages, Plaintiff has also incurred approximately $5,602 in attorneys' fees and $718.65 in costs. He would be entitled to these amounts, and any additional amounts accrued, if he prevailed at arbitration.

The resolution of these issues would require the arbitrator ruling as a matter of law that the IRS standard business mileage rate applies, or it would require a battle of the experts regarding the appropriate "reasonable approximation" of Plaintiff's expenses. This would have been a time-consuming and costly exercise.

3. Summary of Settlement Terms

The parties have agreed to settle this matter for $27,000. The settlement is fair, adequate, and reasonable because it provides substantial compensation to Plaintiff, but also recognizes the risk, uncertainty, and expense of going forward with arbitration.

From this settlement amount, $11,720.90 will be paid to Plaintiff as reimbursement for expenses incurred, and $5,860.45 will be paid to Plaintiff on a Form W-2. Pursuant to Plaintiff's contingency fee agreement with his counsel, a third check will be issued to Plaintiff's counsel in the amount of $9,418.65 for attorneys' fees and costs. In exchange,

> Plaintiff will dismiss his lawsuit with prejudice as to him only, leaving other employees to pursue their claims separately if they so desire.

(Doc. 11 at 3-7.)

### III. LAW & ANALYSIS

As a general rule, "[t]he FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). One exception is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id.* The Court's role in approving an FLSA settlement, and presumably an Ohio wage and hour settlement, "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *See id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). Hence, the Court must ensure that there is a bona fide dispute between the parties and that the settlement is a product of arms-length negotiation that was fair, reasonable, and adequate. *See id.* at *5-6.

1. <u>Whether there was a Bona Fide Dispute Between the Parties</u>

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime. *Id.* at 5. At the heart of this case is whether Plaintiff is entitled to reimbursement for his pizza delivery expenses. As Plaintiff attests, both sides could present arguments to support a wide range of reimbursement rates, which would have involved extensive expert testimony. Given this dispute, the Court is satisfied that the Proposed Settlement Agreement is not an attempt to negotiate around the FLSA's mandatory requirements of compensating employees for unpaid wages.

4

### 2. Whether Negotiations were Fair, Reasonable, and Adequate

In determining whether a proposed FLSA settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors: (a) Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the nature of the negotiations; (f) the objections, if any, raised by the class members; and (g) the public interest. *Id.* at 6. Here, the Court finds that the balance of factors weighs in favor of approving the Proposed Settlement Agreement.

#### a. Likelihood of Success

The most important factor the Court must consider in approving an FLSA settlement "is [Plaintiff's] probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement." *Id.* The lower the likelihood of success, the more desirable a settlement. *Id.*

Here, Plaintiff maintains that the likelihood of success on the merits of his claims was far from certain. Although there is no dispute that Defendants were required to reimburse Plaintiff for his delivery expenses, the parties were at an impasse as to whether Defendants had fulfilled this obligation. Namely, the parties disagreed about the appropriate reimbursement rate that applied. Resolving this issue would have involved a battle of expert witnesses. Plaintiff also contends that the likelihood of success on his Prompt Pay Act claim was uncertain, given that recovery under this statute is predicated on the absence of a dispute surrounding unpaid wages. Because a bona fide dispute exists, Plaintiff suggests that reaching a settlement was the only way

5

to guarantee he was appropriately compensated for his losses. Accordingly, the Court finds that this first factor weighs in favor of approval.

### b. Complexity and Expense of Litigation

The second factor the Court must consider is the complexity and expense of potential litigation. As Plaintiff represents, this case would have come down to a battle of expert witnesses. Hence, the parties would have needed to conduct substantial discovery and expend many resources to hire and retain these experts. The Proposed Settlement Agreement eliminates this burden, and therefore, weighs in favor of approval.

### c. Stage of Proceedings

This next factor is intended to ensure Plaintiff has had access to the information needed to adequately assess his case and the desirability of the Proposed Settlement Agreement. *See id.* at 7. Here, the parties reached a settlement in the early stages of this case -- roughly five months after Plaintiff filed his Complaint. Nevertheless, Plaintiff asserts that Defendants provided him with his driving and reimbursement records, which allowed him to estimate the amount of damages he suffered. In light of this, "the Court deems it appropriate to defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this state of the proceeding." *Id.* (internal quotations omitted).

### d. Judgment of Experienced Counsel

By agreeing to this settlement, both Plaintiff and Defendants' counsel have indicated their shared belief that the Agreement is fair, reasonable, and adequate. The Court gives accords weight to the belief of experienced counsel. *See id.*

### e. Nature of Negotiations

Before approving an FLSA settlement, the Court must be convinced that the parties Proposed Settlement Agreement "is non-collusive and the product of arms-length negotiations." *See id.* Here, the parties represent that they reached the settlement after "numerous discussions, exchanges of information, and additional negotiations." (Doc. 11 at 9.) According to Plaintiff, Defendants provided him with his driving and reimbursement records, which he, in turn, used to estimate his damages. (*Id.*) After the parties reached an agreement on the financial terms of the settlement, they engaged in negotiations regarding the non-monetary terms. (*Id.*) When a dispute arose regarding these terms, Plaintiff formally filed for arbitration. Subsequently, the parties were able to work out and finalize their Agreement. (*Id.*) Given these representations, the Court concludes that the Proposed Settlement Agreement is a product of arms-length negotiations.

### f. Objections by Class Members

In evaluating an FLSA settlement agreement, the Court is required to consider the objections, if any, raised by class members. Here, Plaintiff is settling only the claims brought on behalf of himself. Other employees affected by Defendants' policies are free to bring their claims separately, if they so desire.

### g. Public Interest

The final factor the Court must consider is whether the public interest would be served by settlement. Because the parties' Proposed Settlement Agreement would end potentially long and protracted litigation, the Court finds that this factor weighs in favor of approval. *See Kritzer*, 2012 WL 1945144, at *8 ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation.").

In sum, each of the seven fairness factors weigh in favor of approving the parties' Proposed Settlement Agreement.

### 3. Whether the Attorneys' Fees Award is Reasonable

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). Courts within this circuit have found that a fee representing one-third of the total settlement amount is reasonable. *See, e.g.*, *Farkas v. Boschert*, 2018 WL 3100905, *2 (E.D. Mich. June 25, 2018) ("The Court also finds that Plaintiff's counsel fee, representing one-third of the total settlement amount, is reasonable for the work performed and the result obtained.").

Here, the parties' Proposed Settlement Agreement would afford Plaintiff's counsel $8,700 in attorneys' fees, amounting to roughly one-third of the total settlement amount. The Settlement Agreement also provides for the payment of $718.65 in expenses. The Court finds that these are reasonable amounts in light of the work performed and the result obtained.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Unopposed Motion for Settlement Approval [#11] and **DISMISSES** this case **WITH PREJUDICE**.

**IT IS SO ORDERED.**

                                             **/s/ Algenon L. Marbley**
                                             **ALGENON L. MARBLEY**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: October 21, 2019**